CONCHO SAND & GRAVEL COMPANY and The Travelers Insurance Company, Petitioners,

v.

James B. MONDAY and the State Industrial Commission, Respondents.

No. 37456.

Supreme Court of Oklahoma.

May 21, 1957.

Looney, Watts, Looney, Hamill & Nichols, Oklahoma City, for petitioners.

Hughes & Hughes, Hobart, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

■ The award of workmen's compensation totalling $14,000, at $28 per week, herein reviewed, was to James B. Monday, hereinafter referred to as claimant, for permanent and total disability he suffered as a result of injuries he received when a truck he was driving collided with a truck driven by a stranger to the proceedings. There is no question of the cause and extent of the disability. The only issue involved is whether or not, at the time of the collision, claimant was the employee of Concho Sand & Gravel Company, against whom, together with its insurance carrier, the Travelers Insurance Company, the award was entered, or whether said claimant was the employee of a Mr. I. A. Ringer, who owned the truck claimant was then driving. If Ringer's relationship to the Sand & Gravel Company, hereinafter referred to individually as "Concho", was that of an independent contractor, and, contrary to the finding in said award, claimant was Ringer's employee, rather than Concho's, then the award cannot stand, for the State Industrial Commission, hereinafter referred to merely as the "Commission", was without jurisdiction to make it.

■ The evidence concerning claimant's employment reasonably tends to show the following facts. At the time of the collision, August 20, 1955, Concho was engaged in performing a contract it had previously obtained to furnish gravel for the construction of a new runway, under the supervision of the United States Army Corps of Engineers, at the United States Air Force Base near Altus, Oklahoma. The gravel was obtained at a gravel pit belonging to one A. H. Hughes, several miles from the Base, and transported to it in various trucks, one of which was the "Ringer truck", driven by claimant. According to the undisputed testimony, no truck could be engaged in the work unless it was covered by public liability and property damage insurance; and the security rules and regulations, under which the Base operated, required that the driver of each truck, engaged in said hauling, have what was called a "Temporary Pass" to enter the Base. These passes were issued by the Provost Marshal stationed there, and each had written on it the driver's name, address, height, weight, and other identifying information. Mr. Robert L. ("Chief") Walker, Concho's Superintendent, testified, without contradiction, that it was the practice on the project, for each company, or contractor, performing a part of it, to delegate to a certain one of its employees the task of obtaining one of these passes from the Provost Marshal's office, there on the Base, for each person engaged in its part of the work; and, that for all of those engaged in Concho's part, he was the man who secured the passes. In accord with this system, when the truck owner, Ringer, who, at that time, was himself driving one of his trucks in the gravel-hauling work, learned from Walker that another of his trucks could be used therein, the truck involved here, driven by claimant, was put into said service immediately after Walker, on August 8th, 1955, performed the necessary preliminary of obtaining one of the aforesaid passes for claimant, its driver, or chauffeur.

For the hauling of the gravel in his truck, Concho paid Ringer (apparently at the end of certain prescribed periods) a certain rate per yard per mile, which, originally, amounted to $3.60 per truckload. Record of how many loads of gravel each truck hauled from the Hughes pit to the "stock" pile, or piles, on the Base, was kept by a person called a "checker", whom Walker had stationed at said pile, or piles. Each time one of these trucks was unloaded at a stock pile by Concho's hydraulic hoist, the checker gave its driver a "ticket" as evidence of that fact. According to the undis-

puted evidence of the arrangement between Ringer and the claimant, the claimant was compensated for his services by Ringer's paying him therefor, ⅓rd of the revenue he obtained from Concho, at the aforesaid rate, for the loads of gravel the truck hauled.

As the work progressed, the road over the more direct route between the gravel pit and the Base, which covered a distance of only 10 miles, became so rough that some of the drivers so engaged, began using another road that was smoother, but 2 miles longer in distance. Because of this longer hauling, Walker was asked to, and did, raise the rate paid for the hauling, so that at the time of the collision in question, Ringer was receiving from Concho $4 for each load of gravel his trucks hauled in the aforesaid manner.

The petitioners contend that, on the basis of the evidence, Ringer could have borne no other relationship to Concho than that of an independent contractor, and that claimant was his, rather than Concho's, employee. Respondents maintain that there was a conflict in the evidence on this point that was properly resolved by the Commission's finding and award; and that said finding, and order, or award, is conclusive, and cannot be disturbed by this court. For the latter proposition, they cite Briscoe Construction Co. v. Miller, 184 Okl. 136, 85 P.2d 420, and Harley v. Smith, 152 Okl. 56, 3 P.2d 666, which they concede were expressly overruled by Williams v. Branum, 192 Okl. 129, 134 P.2d 352. In their further argument they call attention to the fact that House Bill No. 553 (Tit. 85 O.S.1955, Supp. sec. 69.1) enacted by the Twenty-Fifth Legislature, refers to members of the State Industrial Commission as "Judges" and requires them to be licensed attorneys for at least five years preceding their initial appointment. On the premise that these statutory provisions make of the Commission, as now constituted, a "Court" in fact, respondents urge us to now accord its findings, on judicial and jurisdictional matters, what they characterize as "the same respect * * *

given any of the other inferior courts or judicial tribunals of the State." We do not think this argument meets the issue in this case. Here, as we see it, we are concerned not so much with any conflict in the evidence, as we are with the view to be taken of uncontradicted evidence and the significance of certain undisputed facts in the purely legal (as distinguished from factual) aspect of determining the question: Was claimant the employee of Concho, or was he an independent contractor, or the employee of an independent contractor? If we determine that the claimant's contractual relationship was with Ringer, and that there was no such relationship, or privity, between claimant and Concho, then, regardless of the precise nature of, or name to be given, his relationship with Ringer, the Commission had no jurisdiction to award him compensation as an employee of Concho.

Ordinarily, the manner in which a worker is paid is a significant fact to be considered in determining whether or not he is an employee. Here, as already pointed out, there is no question, even on the basis of his own testimony, that claimant was paid by Ringer, and that his pay, or wage, consisted of, or was equivalent to, one-third of the amount of money Concho paid Ringer for the loads of gravel the truck hauled. Of course, such method of payment is not alone determinative of the matter, and would not preclude claimant from being Concho's employee, as shown by State Highway Commission v. Brewer, 196 Okl. 437, 165 P.2d 612, 613, if Concho retained "superior control and direction of the manner, method and time of performance * * *" of the claimant's work. In the present case, Concho's superintendent, Walker, naturally had the authority to direct claimant where to obtain the truck loads of gravel he hauled, and where, on the Base, to unload them; but such control is usually regarded as having to do merely with the result, or progress of the work, rather than the "manner" and "method" of doing it, and consequently, as outside the sphere of the aforesaid "superior control

and direction" necessary for an employer-employee relationship. See Imperial Paving Co. v. Russell, Okl., 308 P.2d 278, together with the cases therein cited, particularly Miller v. Steelman Const. Co., Okl., 282 P.2d 740, 741, citing Hawk Ice Cream Co. v. Rush, 198 Okl. 544, 180 P.2d 154; and the Annotations at 20 A.L.R. 684, 691 et seq.

Respondents point to certain parts of claimant's testimony as particularly significant in showing the direction and control Walker exercised over the gravel truck drivers. One of these excerpts is to the effect that, on the day of the collision, Walker told claimant where to go to get the gravel. The substance of other testimony is that, on previous occasions, Walker had directed him to other places. Another excerpt might be subject to one of two interpretations, namely: That Walker directed the drivers which road to travel *after* they arrived at the Base, or, which road to use in traveling from the Hughes pit *to* the Base. We think the only reasonable interpretation of this testimony is that it referred to a road *on* the Base, rather than to any route, or road, between the Base and the gravel pit, especially when this testimony is considered with testimony given by claimant's witness, Ringer, who corroborated Walker's testimony to the effect that he had no authority to, and did not attempt to, control the route which the gravel trucks took between the gravel pit and the Base. In fact, we think the only reasonable interpretation of one part of Ringer's testimony is that before the per-load sum, Concho was paying for the hauling, increased from $3.60 to $4, his trucks were in fact using the longer, rather than the more direct, and rougher, road from the pit to the Base; and the fact that the truck owners, or their drivers, in the free exercise of their own judgment, had found it desirable or necessary to travel this extra mileage seems to have been the basis upon which the truckers were able to prevail upon Concho, through its agent Walker, to increase the per yard per mile price for the hauling. We find no evidence in the record that directly and unequivocally contradicts the testimony of Walker to the effect that, after the method by which Concho paid for the hauling was changed, from an hourly rate to the per yard per mile rate, Concho had no interest, concern, or control, and exercised none, as to selection of the route over which the trucks traveled between the Base and the gravel pit—or their speed—as long as its gravel requirements were met.

The evidence is wholly insufficient to show there was any kind of a contract between Concho and claimant. Some of the answers of claimant's witnesses, to questions propounded them, were evasive and unresponsive. Others are suggestive of an inference that claimant's agreement to drive the truck was made with Walker; but, without unnecessarily lengthening this opinion to set forth the material portions of such testimony, we deem it sufficient to say that when they are compared with other portions of the same witness' testimony, and with the testimony of other witnesses for the claimant, and each is interpreted in the light of the other, the only reasonable conclusion to be reached therefrom, is that the claimant was employed, as Mr. Ringer admitted, by him, and that Concho had no control, other than that entailed in its responsibility for the progress and result of the work, over the number of loads of gravel per day the claimant hauled, nor the time, or number of hours, he worked. As far as the record shows, Concho had nothing to do with the maintenance of Ringer's trucks and there was no obligation to prevent him from withdrawing one or both of them, from Concho's service for one hour, or one day, or longer, either for repairs, or any personal reason.

Nor do we think the soundness of the above conclusion is rendered questionable by the undisputed fact that Concho's superintendent, Walker, had to give his permission before any truck, or truck driver, could be used on the project or that the driver had to report to him and personally

furnish the necessary identifying information to enable Walker to obtain, for said driver (from the Provost Marshal's office) a pass that he might come, or drive on, or onto, the Air Force Base. The requirements, with reference to these passes, were not made by Concho for the performance of the work, but were the requirements of an agency of the U. S. Government, with which all, who were employed on the project, had to conform. And, the fact that Concho's name was written opposite the word "Department" on the form of "Temporary Pass" issued to claimant was of no particular significance. Rather than constituting any proof that claimant was the employee of Concho, this fact, in the light of the other facts in the case, is more consistent with the conclusion that this was no more than another bit of identifying information, and that its purpose was to show the Base's security officers in which part of the runway work claimant was engaged.

As above indicated, it is our opinion that there is no material difference between this case and Imperial Paving Co. v. Russell, supra, and, that, when the principles and authorities, referred to therein, are applied to the evidence of record here, it can only be determined, as it was there, that the claimant was not an employee of the company claimed to be his employer. There are facts in the State Highway Commission Case, supra, which, apparently, were considered important there, that are not present here. We deem it unnecessary, at this time, and in this opinion, to reconsider that case and determine whether or not those facts would constitute valid distinctions and reasons for reaching a different result upon proper application of the legal principles governing the issue involved. Too numerous to mention have been the times that this court, and others, have indicated that, because of the wide variety of facts that may have a bearing on the matter, each case must stand upon its own particular evidence.

In the present case, it is our view that there is insufficient evidentiary conflict, as to the controlling facts concerning the claimant's relationship with Concho, to render the Commission's determination conclusive. From our review of the record, we think the Commission erred, as a matter of law, and, on the basis of controlling facts (not seriously, or ultimately disputed) in finding that the claimant was an employee of Concho and in awarding him compensation, as such. The award is therefore vacated.